**L & L FREIGHT LINES, Inc., v. RAILROAD COMMISSION OF FLORIDA et al.**

District Court, S. D. Florida, Jacksonville Division.

Dec. 4, 1936.

Kitchen & Schwartz, of Jacksonville, Fla., for plaintiff.

William P. Simmons, Jr., of Tallahassee, Fla., for defendants.

STRUM, District Judge.

Plaintiff, a common carrier by motor vehicle, seeks to enjoin the Railroad Commission of Florida from enforcing against it in its interstate operations that portion of section 11 of chapter 14764, Laws of Florida, Acts 1931, which limits trucks and trailers to a load of 12,000 pounds in the state of Florida.

Plaintiff contends that by the Motor Carrier Act of August 9, 1935, § 204 (49 U.S.C.A. § 304) Congress assumed the regulation of interstate motor carriers for hire, pre-empting the field to the exclusion of state regulation. The precise question presented is whether or not Congress has assumed the regulation of interstate motor vehicle carriers as to weight, and if so whether such federal regulation displaces the Florida regulatory statute.

In section 204 (a) (1) of the Motor Carrier Act, 1935 (49 U.S.C.A. § 304 (a) (1) Congress authorizes the Interstate Commerce Commission "to regulate common carriers by motor vehicle *as provided in this chapter,* and to that end the Commission may establish reasonable requirements with respect to continuous and adequate service, transportation of baggage and express, uniform systems of accounts, records, and reports, preservation of records, qualifications and maximum hours of service of employees, and safety of operation and equipment." (Italics supplied.)

It is significant, and worthy of particular note, that the regulation of "weights" of such motor vehicles, obviously a most important element of regulation, was not included amongst the matters specifically enumerated in section 204 (a) (1). The act contains no express or specific regulation, nor authority to regulate, motor carriers as to size and weights. If such authority is to be found in the act, it must be spelled out either from the general language "to regulate common carriers by motor vehicle," or by interpretation of the term "safety of operation and equipment."

The argument that such authority is to be found in the quoted phrases is refuted by the specific provisions of section 225 of the act (49 U.S.C.A. § 325) that "the Commission is hereby authorized to investigate and report on the *need* for Federal regulation of the sizes and weight of motor vehicles and combinations of motor vehicles." (Italics supplied.) It should be noted that this section does not provide that the Commission shall *determine* by investigation what the sizes and weights of motor vehicles should be, and thereupon to adopt regulations to put the same into effect. The authority is merely to "investigate and report on" the "need" for federal regulation of sizes and weights—a wholly prospective matter, clearly indicating an absence of intent to presently regulate in that respect. If Congress intended to presently regulate in respect of sizes and weights, but desired the Commission to first determine by investigation what the regulations should be and thereafter put the same into effect, more apt language to that end would have, no doubt, been used. Section 204 of the act specifically enumerates practically every aspect of regulation, except sizes and weights. The language of section 225 of the act makes it quite clear that the omission of sizes and weights was no mere oversight, but was deliberate. When that omission is viewed in connection with the language of section 225 of the act authorizing the Commission to investigate and "report on" the "need" for federal regulation of sizes and weights, not to determine what such regulations shall be, nor

to put any such regulation in effect, but merely to "report," the conclusion is inescapable that Congress intended to withhold regulation in that respect until some future time.

Of course, the size and weight of vehicles has an indirect effect upon safety of operation and equipment, as it may enter into a consideration of the type and power of brakes with which the vehicle should be equipped. Primarily, however, size and weight is a problem of road stress —a problem which may vary widely in different states, as well as in different parts of the same state, depending upon the construction and age of roads. In the latter aspect the problem is therefore one primarily local in nature, which no doubt explains why Congress withheld regulation in that respect until the Commission "investigates and reports."

If Congress has conferred upon the Interstate Commerce Commission the power to regulate as to size and weight, state regulation is precluded. The fact that the Commission may not have exercised its regulatory authority to the full extent conferred is of no significance in ascertaining the scope of the Act conferring the power. Napier v. Atlantic Coast Line R. Co., 272 U.S. 605, 47 S.Ct. 207, 71 L.Ed. 432. In the absence of section 225 of the act, it might appear that the Commission has the power to regulate sizes and weights as incidental to safety of operation and equipment, under the powers enumerated in section 204. When viewed, however, in connection with the omission of a specific enumeration as to sizes and weights in section 204 of the act, section 225 is a clear negation of any present intent on the part of Congress to regulate as to sizes and weights until the Commission has investigated and reported upon the "need" therefor.

The court has considered the fact that some member of Congress stated in committee or in debate, that when the Commission determined what sizes and weights should be imposed, it could then put such regulations into effect without additional legislation. That statement, however, while pertinent, is a matter of individual opinion of the legislator. The court is also aware that amendments were offered, which in effect purported to expressly authorize recognition of the continued exercise by the states of their police powers, which amendments were not adopted.

But there may have been many reasons for the rejection of these general amendments. Their defeat does not evidence an intention to pre-empt that field of regulation when taken in connection with the other matters hereinabove mentioned.

Before the court will hold that the regulatory police powers of the states are suspended and superseded so as to deprive the states of authority to prescribe size and weights of vehicles using state highways in interstate commerce, there must be clear and unmistakable evidence of an intent on the part of Congress to occupy and pre-empt that field of regulation to the exclusion of the states, assuming for the purpose of this hearing that Congress has the power so to do. Napier v. Atlantic Coast Line R. Co., 272 U.S. 605, 47 S.Ct. 207, 71 L.Ed. 432. For the reasons stated, evidence of such an intent on the part of Congress to regulate as to sizes and weights, is not only lacking, but in the opinion of the court is negatived by section 225 of the act.

Injunction denied.